IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PATRICK PATRONAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 02-PT-2787-E |
| | ) | |
| WATERWORKS, SEWER AND GAS BOARD OF THE CITY OF CHILDERSBURG, ALABAMA, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon plaintiff Patrick Patronas's ("Patronas") Motion to Strike, filed on July 2, 2003.

### FACTS AND PROCEDURAL HISTORY

Patronas filed his original complaint against Defendant Waterworks, Sewer and Gas Board of the City of Childersburg, Alabama ("the Board") on November 14, 2002. Patronas, a recreational user of Talladega Creek and the Coosa River downstream of the Childersburg Pinecrest Lagoon ("Lagoon"), brought suit against the Board pursuant to the citizen suit provision of the Federal Water Pollution Control Act ("FWCPA"), 33 U.S.C. § 1365(a). The Board owns and operates the Lagoon pursuant to the National Pollutant Discharge Elimination System ("NPDES"), Permit AL0021458 ("Permit").

On December 16, 2002, the Board filed a motion to dismiss. When this Court denied the Board's Motion to Dismiss on May 1, 2003, it certified the Order for interlocutory appeal on the standing issue and specifically stayed the action until either more than ten days from the entry of the order had expired and such application for permission to appeal was made or the Eleventh

Circuit refused in writing to hear the interlocutory appeal, whichever was later. On June 10, 2003, the Eleventh Circuit filed a certified copy of its refusal to hear the interlocutory appeal. As of June 25, 2003, the Board had not filed an answer, and on that date Patronas filed a Motion that Averments in Plaintiff's Complaint Be Deemed and Decreed as Admitted. The Board answered the complaint on June 27, 2003, and on July 1, 2003, this Court denied Patronas's motion.

## ARGUMENTS

I.   **Patronas's Motion to Strike**

Patronas argues that the Board's late answer did not meet the requirements of Rule 6(b)(2) of the Federal Rules of Civil Procedure. Rule 6(b)(2) provides: "[T]he court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect*." (Emphasis added). The Board's failure to seek this Court's leave to file a late Answer, Patronas contends, necessarily means the Board never made the required excusable neglect showing.[1]

Additionally, Patronas argues that the Board's defenses are "insufficient" for purposes of Rule 12(f) of the Federal Rules of Civil Procedure. Addressing the Board's "preemption" arguments, i.e., that regulations of the Alabama Department of Environmental Management ("ADEM") and provisions in the FWPCA preempt Patronas's lawsuit,[2] Patronas contends that state

---

[1] As of the filing date of Patronas's Motion to Strike, the Board had not sought this court's leave to file a late answer. The Board, by virtue of Defendant's Response to Plaintiff's Motion to Strike and Motion for Leave to File An Answer, filed on July 21, 2003, now seeks the court's leave to answer out of time.

[2] *See* Answer at ¶¶ 3,5.

laws such as ADEM rules and regulations cannot preempt federal law. Moreover, Patronas notes, the citizen suit provision of the FWPCA, 33 U.S.C. § 1365(a), specifically authorizes his type of lawsuit and the U.S. Supreme Court has often validated citizen suits. Furthermore, Patronas notes, the Board fails to assert a 33 U.S.C. § 1319(g)(6) bar.

Next, Patronas takes issue with the following standing-related defenses:

> The plaintiff has failed to demonstrate sufficient individual standing so as to bring this action by merely conclusory (*sic*) alleging that neither EPA nor ADEM has 'commenced and diligently prosecuted an administrative enforcement action for the violation set out herein pursuant to comparable state law.' *See* Answer, ¶ 4.

> The mere allegation of having 'recreated' on some unspecified date, place or time with unspecified frequency in one body of water does not offer sufficient standing for the plaintiff to supersede the activities of the Alabama Department of Environmental Management in its comprehensive system of regulation of discharges of effluence. *See* Answer, ¶ 3.

On the contrary, Patronas contends, he based standing purely on personal recreational and environmental interests in Alabama waterways rather than on ADEM's failure to commence and diligently prosecute an administrative enforcement action. Patronas adds:

> Defendant has already filed a motion to dismiss on this point and both this Court and the Eleventh Circuit have upheld Plaintiff's allegations. Defendant can deny that Plaintiff has standing, but it cannot deny that the allegations in Plaintiff's complaint and affidavit are sufficient to give this Court jurisdiction over the case.[3]

According to Patronas, he sufficiently detailed both the sites and frequency of his recreation to establish standing under federal law.

Addressing the Board's denial that it committed the violations set out in the Complaint, *see* Answer at ¶ 6, Patronas states that ADEM's Discharge Monitoring Reports (DMRs) submitted by

---

[3] The Court notes that it "reluctantly" denied the Board's Motion to Dismiss and deemed the plaintiff's standing apparently "tenuous at best." *See* Memorandum Opinion at 23. The Eleventh Circuit has not "upheld" plaintiff's allegations.

3

the Board speak for themselves. Patronas references, without citation, widespread legal authority for the proposition that DMRs are indisputable admissions in a citizen suit.

Finally, Patronas makes some general observations about the answer. Patronas denies the truth of the Board's depiction of Patronas as a selfish litigant whose repetitive lawsuits do not serve the "overall best interest" of Alabamians. He notes that filing two previous and one current lawsuit does not constitute a "systematic pattern." Patronas argues that, as required by 33 U.S.C. § 1365, he only purports to act on behalf of his own recreational and environmental interests. However, Patronas refers to a judicial consent degree stemming from his Mulberry Fork lawsuits as proof that his litigation serves interests of Alabamians.

## II.     The Board's Response

First, the Board addresses the excusable neglect requirement of Rule 6(b)(2), invoking the Court's discretion to accept a late Answer. *See, e.g., Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 130 F.2d 185, 187 (3rd Cir. 1942)("Permission to plead after the allotted time is a matter for the discretion of the trial judge"); *Tenenbaum v. Williams,* 970 F. Supp. 606, 611 (E.D.N.Y. 1995)("'The determination of whether neglect is 'excusable' in a particular case rests with the sound discretion of the district court.'")(*quoting Davidson v. Keenan*, 740 F.2d 129, 132 (2d Cir. 1984)).[4] The Board contends that a defendant's response to a plaintiff's motion to strike has been deemed to meet the motion requirement of Rule 6(b)(2). *See Yesudian v. Howard University*, 270 F.3d 969, (D.C. Cir. 2001).

---

[4] While the Board previously appeared to dispute the tardiness of its answer in its response to Patronas's Motion that Averments in Plaintiff's Complaint Be Deemed and Decreed as Admitted, Defendant now appears to concede that the answer was filed beyond the prescribed court deadline.

The applicable excusable neglect standard, the Board argues, is the standard set forth in *Pioneer Investment Services Corporation v. Brunswick Associates Limited Partnership,* 507 U.S. 380 (1993), which was adopted by the Eleventh Circuit in *Advanced Estimated System, Inc. v. Riney,* 130 F.3d 996 (11th Cir. 1997)(addressing excusable neglect in the context of Fed. R. App. P. 4(a)(5)).[5] In determining whether excusable neglect exists, the Board argues, this Court must consider all relevant circumstances, including potential prejudice to the nonmoving party, the length of the delay and its affect on judicial proceedings, the reason for the delay (including whether it was within the late filer's control), and whether the late filer acted in good faith. *Pioneer,* 507 U.S. at 388 (1993). Citing *Pioneer,* the Board argues that late filings caused by inadvertence, mistake, or carelessness can meet the "excusable neglect" standard. *Id.* at 381.[6]

The Board contends that the relevant circumstances surrounding its late filing of the answer meet the Pioneer standard for excusable neglect. In support of this contention, the Board notes that the Answer was only four days late, that its tardy filing was inadvertent and in good faith, that it never intended to procrastinate or prejudice Patronas, and that the delay has not impacted the proceedings since the Answer repeats previous defenses disclosed to this Court in Defendant's Motion to Dismiss. The Board also broadly invokes the "interests of justice."

Additionally, the Board argues that its answer meets the requirements of Rule 12(f).

---

[5] The court notes that the Eleventh Circuit in *Advanced Estimated System, Inc., v. Riney,* held as a matter of law that "an attorney's misunderstanding of the plain language of a rule cannot constitute excusable neglect such that a party is relieved of the consequences of failing to comply with a statutory deadline." *Id.* at 998. The Eleventh Circuit noted that its holding comported with the *Pioneer* standard.

[6] The Board cites *Pioneer*'s syllabus rather than the body of the case, which contains a slightly different quotation. Patronas notes this discrepancy in his reply, as addressed later in this memorandum opinion.

According to the Board, courts disfavor motions to strike. *See, e.g., Circuit Systems, Inc. v. Mescalero Sales, Inc.*, 925 F. Supp. 546, 548 (N.D. Ill. 1996)("Rule 12(f) motions are not favored and will be denied unless the language in the pleading has no relation to the controversy and is unduly prejudicial").[7]

The Board notes that although Patronas deems its defenses insufficient and frivolous, among other things, Patronas fails to allege potential prejudice, harm suffered, or lack of nexus to the controversy. Rule 8(b)'s pleading requirement of "short and plain terms," the Board argues, provides the proper benchmark for gauging the adequacy of its Answer. *Fed. R. Civ. P.* 8(b). The Board says that it has asserted legitimate defenses according to this standard.

Defendant's preemption defenses, the Board states, were clearly detailed in its Motion to Dismiss. The Board posits that U.S.C. § 1319(g)(6) as well as the Alabama open meetings laws "preempt" Patronas's lawsuit.[8] Patronas's systematic pattern of litigation for personal reasons, the board repeats, is evident. Additionally, the Board notes, Patronas purported to act in the public's interest when he requested injunctive relief.[9]

### III.   Patronas's Reply

Patronas contends that the Board's selective quotation of *Pioneer* omits important parts of the case. For instance, Patronas argues, the Board omitted the qualifying phrase "where

---

[7] The Board also cites *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 174 F. Supp. 2d 388, 398 (D. Md. 2001); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996); *Int'l Longshoreman's Ass'n, S.S. Clark's Local 1624, AFL-CIO v. Virginia Int'l Terminals*, 904 F. Supp. 500, 504 (E.D.Va. 1995).

[8] It appears that the Board uses the term "preemption" broadly rather than in strict reference to the Supreme Court doctrine.

[9] *See* Compl. at ¶ 21.

6

appropriate" in the sentence "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, not just those caused by intervening circumstances beyond the party's control." Patronas also draws attention to the Board's failure to cite *Pioneer* for another key limitation on late filers: "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) . . . is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer* at 392. Patronas argues that the United States Supreme Court intended only unusual filing circumstances such as the one in *Pioneer* to qualify for excusable neglect.[10] Unlike the late filer in *Pioneer*, Patronas asserts, the Board alleged no unusual filing circumstances, such as an ambiguous court notice, warranting a Rule 6(b) extension of time.

Furthermore, Patronas argues, the Eleventh Circuit requires a late filer arguing "excusable neglect" to allege three things: a meritorious defense that would have affected the outcome, no prejudice to the other party, and a good reason for failing to answer. *See In Re Worldwide Web Systems, Inc. v. Feltman*, 328 F.3d 1291 (11th Cir. 2003)(appellant arguing excusable neglect in the context of Fed. R. Civ. P. 60(b)(1)). *See also In Re Knight*, 833 F.2d 1515 (11th Cir. 1987)(court requiring the movant to allege a "good reason" to have a default judgment set aside); *African Methodist Episcopal Church v. Ward*, 185 F.3d 1201 (11th Cir. 1999). Importantly, Patronas notes, the Board never offers a good reason for failing to timely serve its Answer. Bad precedents would be set, Patronas contends, if late filers are allowed to meet the 6(b)(2) requirements with unexplained

---

[10] As Patronas contends, the Supreme Court in *Pioneer* found that the particular notice of bar date left a "dramatic ambiguity" in the notification. *Pioneer*, 507 U.S. at 398.

7

assertions of "no prejudice" and "inadvertence." Moreover, Patronas argues, the Board's failure to file certain discovery-related documents, including initial disclosures and responses to Patronas's discovery requests, demonstrates a "calculated, intentional difference to or disregard for the deadlines," i.e., bad faith. According to *Pioneer*, Patronas argues, any indication of bad faith would be a reason not to find a late filer's neglect "excusable."

Addressing Fed. R. Civ. Proc. 12(f), Patronas argues that a defense is legally insufficient if it is impossible for a Defendant to prove a set of facts in support of the defense that would defeat the complaint. *See, e.g., Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, CV-02-C-2523, at 3 (N.D. Ill. March 28, 2003).[11] Patronas repeats previous arguments that the federal preemption doctrine does not apply to the case. Even construing the Board's defense as asserting a § 1319(g)(b) bar rather than an invocation of the federal preemption doctrine, Patronas contends that such a defense is insufficient because it goes against the law of the case as established by *McAbee v. City of Fort Payne*, 318 F. 3d 1248 (11th Cir. 2003) and this Court's previous ruling that it is "bound by *McAbee*, and as the Board notes, '[t]hese issues have been resolved against comparability.'"

Patronas reiterates that, contrary to the Board's standing-related defenses, the complaint does not seek to "supersede," as the verb is commonly defined, ADEM's actions in regard to the Board. Furthermore, recreational injuries are sufficient to confer standing, Patronas argues, despite the Board's assertions to the contrary. *See, e.g. Friends of the Earth v. Laidlaw*, 528 U.S. 167, 183 (2000); *American Civil Liberties Union v. Rabun County Chamber of Commerce*, 698 F.2d 1098

---

[11] The court notes that *Ocean Atlantic Woodland Corp.* also states: "'A movant bears the burden of demonstrating that the challenged allegations are so unrelated to plaintiffs claim as to be devoid of merit, unworthy of consideration and unduly prejudicial." *Id.* (*citation omitted*).

(11th Cir. 1983). Patronas also reminds this Court that both the Board's Motion to Dismiss, which contained the standing-related assertions in the Answer, and this court's certification of an interlocutory appeal to the Eleventh Circuit on the standing issue, were denied. Thus, the Board's argument that the Complaint failed to meet the pleading requirements of standing, Patronas argues, is legally insufficient. Again, the Eleventh Circuit has not "ruled."

The Board's own DMRs, Patronas reasserts, effectively counter the Board's denial that it committed the violations alleged in the complaint,[12] thus rendering that defense factually incorrect and a further indication of the Board's bad faith.[13]

Finally, Patronas asserts that the Board exhibited bad faith by generally denying all the allegations in the complaint, including whether the Board received the required 60-day notice of Patronas's intent to sue. Patronas points to the return receipt card signed by the Board's agent as evidence of proper notice.[14]

---

[12] Patronas cites several cases for the proposition that the Board cannot challenge the DMRs it previously submitted. *See, e.g., U.S. v. Sheyenne Tooling & Mfg. Co., Inc.*, 952 F. Supp. 1414, 1418 (D.N.D. 1996)(involving submission of reports to the Environmental Protection Agency).

[13] Patronas supports his allegation of bad faith by submitting DMRs for April 2003 and May 2003 as an exhibit to his Motion to Strike. Patronas points to these DMRs as evidence that the Board failed to correct all pollution violations by March 2003, the remedial date previously represented to the court. Furthermore, Patronas asserts that having to show that the Board committed all the violations alleged in the complaint would require him to produce several years' worth of DMRs, a task he deems "beyond the reasonable scope of his motion to strike."

[14] The Board's admission of the court's jurisdiction, Patronas argues, is inconsistent with its general denial of the allegations in the complaint, since proper notice is a prerequisite to jurisdiction.

9

## CONCLUSIONS OF THE COURT

Applying its discretion, the court will deny the motion. The case had a somewhat unique history because of the certification. It is not absolutely clear that under such circumstances the answer would be deemed late. In any event, there is absolutely no prejudice to plaintiff and there is a public interest involved.

As to the allegations concerning the insufficiency of the answers, the court is of the opinion that these issues will be better addressed by a motion for summary judgment.

This _14_ day of August, 2003.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE